# In the United States Court of Federal Claims

No. 20-860C
Filed: April 30, 2021

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * | * |
| | * |
| **RONNI L. WILCOCK,** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| **UNITED STATES,** | * |
| | * |
| Defendant. | * |
| | * |
| * * * * * * * * * * * * * * * * * * | * |

**Ronni L. Wilcock**, pro se, Anchorage, Alaska.

**Ashley Akers**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were **Eric Brunskin**, Assistant Director, Commercial Litigation Branch, and **Brian Boynton**, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C.

## O P I N I O N

**HORN, J.**

Pro se plaintiff, Ronni L. Wilcock, a former civilian biological scientist for the Air Force Civil Engineering Center, filed a complaint in the United States Court of Federal Claims. In addition to disability payments that plaintiff acknowledges and provides documents that she is receiving in her filings in this court, plaintiff also seeks "severance pay, interest, any appropriate penalties, costs, any other remedies allowed by law." Defendant moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC) (2020) for failure to state a claim upon which relief can be granted.

## FINDINGS OF FACT

Plaintiff worked for the United States Department of Agriculture from May 11, 1979 until June 19, 1979, and again from June 2, 1991 until September 14, 2004. Plaintiff then worked for the Department of the Air Force from January 23, 2017 until February 28, 2019. On May 1, 2018, plaintiff was asked to report for a "fitness for duty examination" by the Air Force. On May 9, 2018, plaintiff was determined to be medically unqualified to continue work because of "[e]nvironmental limitations," by Dr. Stanley Kimball, a doctor at Joint Base Elemendorf-Richardson, Alaska. Dr. Kimball determined that plaintiff's heart condition, which had caused plaintiff difficulty breathing, coughing, and chest pains,

limited plaintiff's ability to work a 40-hour week as required by her job. Plaintiff completed a Request for Reasonable Accommodation on June 26, 2018, which explained plaintiff's heart condition and requested she be allowed to work part-time. Plaintiff sent the request to her employer's office. Her request provided: "My cardiologist states (in attached note), that I am 'unable to work the hours required by the Air Force.'" In response to plaintiff's request, on July 5, 2018, plaintiff received an email from Linda Ray, a human resources specialist in the Civilian Personnel Office of the Air Force. In the email, Ms. Ray inquired whether plaintiff would be willing to relocate to another military base, not in Alaska, for a possible part-time position. Plaintiff declined the opportunity to relocate, and, on August 24, 2018, plaintiff's Request for Reasonable Accommodation was declined.

On September 6, 2018, plaintiff was given notice by her supervisor of a proposed action to separate her from her position with the Air Force. In response, on September 11, 2018, plaintiff timely opposed the Notice of Proposed Separation because it did not include severance pay. On November 13, 2018, the Supervisory General Engineer and Branch Chief in the Notice of Decision to Separate, found the separation was warranted and notified plaintiff that "effective 16 November 2018 you will be separated from your position and the Federal Service for your inability to perform the essential functions of your officially assigned position." On January 4, 2019, a medical specialist from the "Office of Personnel Management [(OPM)] Retirement Services Program" indicated in a letter to the Air Force that, after approving plaintiff's application for disability retirement payments, while attempting to "establish monthly interim payments and complete final adjudication of the annuity," the plaintiff's records sent to them "show that the individual has not been separated." On November 23, 2019, plaintiff received a letter from the "Office of Personnel Management Retirement Services Program" which stated that "[a]n adjustment has been made to your FERS [Federal Employment Retirement Services] disability retirement benefits." (brackets added). The letter from the "Office Personnel Management Retirement Services Program" explained that:

> Since your annuity began **NOVEMBER 10, 2018**, the 12 months at the 60% rate ended on the last day of **NOVEMBER, 2019**.
>
> Effective **DECEMBER 01, 2019**, the new rate to which you are entitled is 40% of your high-three average salary, minus 60% of any Social Security disability benefit you may be entitled to receive.

(emphasis and capitalization in original).[1]

---

[1] There is discrepancy as to a number of the dates in the record. According to the "Office of Personnel Management Retirement Services Program" letter to plaintiff, which is quoted, in part, above, plaintiff has been compensated for her disability backdated to November 10, 2018. According to the "Notice of Decision to Separate" by the Air Force, the effective date of plaintiff's separation was to be November 16, 2018. The date of separation from the "Order and Summary of Conference Call" before the United States Merit Systems Protection Board is listed as November 16, 2018. Defendant adds further confusion to the dates by adding a reference to November 18, 2018, stating: "The

On February 25, 2019, plaintiff filed a complaint with the Air Force Office of Equal Opportunity arguing that the Air Force had discriminated against her "in violation of Section 501 of the Rehabilitation Act of 1973." The March 10, 2020 decision issued by the Air Force Office of Equal Opportunity, included in the defendant's appendix to its motion to dismiss, split plaintiff's claims into four separate claims: Claim A, discrimination based on disability; Claim B, whether the denial of severance pay was disability discrimination; Claim C, whether the denial of reasonable accommodation was disability discrimination; and Claim D, whether the denial of severance pay constituted harmful procedural error in violation of the legal definition of "Reasonable Offer."

On March 10, 2020, the Air Force Office of Equal Opportunity dismissed all of plaintiff's claims except Claim A. The Air Force Office of Equal Opportunity decision stated, "Claims B and C were appropriately dismissed because they were untimely." The Air Force Office of Equal Opportunity decision indicated that "Claim D was appropriately dismissed in accordance with 29 C.F.R. § 1614.107(a)(1) for failing to state a claim under 29 C.F.R. § 1614.103(a)." The Air Force Office of Equal Opportunity, with regard to Claim A, held that plaintiff "did not establish that she was a qualified individual with a disability within the meaning of the Rehabilitation Act of 1973. We further find that the agency articulated legitimate, nondiscriminatory reasons for its challenged action." The Air Force Office of Equal Opportunity found no causes of discrimination in favor of plaintiff. Moreover, the Air Force Office of Equal Opportunity stated:

> In this complaint, the complainant has provided no probative evidence that the agency's legitimate, nondiscriminatory reasons for separating her from her position and from the Federal service was merely a pretext for discrimination. Moreover, according to her testimony, the complainant did not appear to believe the RMOs [responsible management officials] had discriminated against her or believe that the separation action itself was discriminatory.

(brackets added).

On April 5, 2020, plaintiff timely appealed the findings of the Air Force Office of Equal Opportunity to the United States Merit Systems Protection Board (MSPB). On June 11, 2020, the MSPB dismissed plaintiff's claim regarding severance pay for lack of jurisdiction. The Administrative Law Judge who issued the decision stated: "I explained to the parties that the issue of whether the agency should have provided the appellant with severance pay is not before me." On November 23, 2020, the Administrative Law Judge held that "even though the appellant successfully performed the duties of her position when she was able to work, her inability to attend work - which manifested in significant absences and an unpredictable schedule - impacted her overall performance

---

disability retirement was backdated to November 18, 2018, two days after the effective date of separation." The defendant's November 18, 2018 date does not appear elsewhere in the record before the court. The date discrepancies do not, however, change the result in the case as to plaintiff's entitlement or lack of entitlement to severance pay.

3

in her position." Wilcock v. Dep't of the Air Force, No. SF-0752-20-0559-I-1, 2020 WL 7029608, at *8 (M.S.P.B. Nov 23, 2020). According to the MSPB Administrative Judge:

> Ultimately, the agency declined the appellant's request for a reasonable accommodation, but the evidence reflects they did so only after considering the appellant's request and submitted documentation, and assessing whether her requested accommodation or another accommodation could be provided without creating an undue hardship on the agency.

Id. at *7. The MSPB found that agency removal of plaintiff due to her disability was warranted. See id. at *10.

In her complaint filed in this court, plaintiff claims entitlement to severance pay. She states, "[t]he U.S. Air Force did not offer me the severance pay for which I was entitled at the time I was medically separated." Plaintiff alleges in her complaint that she "never received a written reasonable offer," citing to 5 C.F.R. § 536.104, and that plaintiff was involuntarily separated from her service, citing to 5 C.F.R. § 550.703. Plaintiff alleges in her complaint:

> Requiring me to relocate to the Lower 48 for a dubious position does not meet the legal requirement of a reasonable offer: it is not a written offer with an attached position description, it is not within my commuting area, **and declining reassignment outside my commuting area is still involuntary separation; I am eligible for severance pay.**

(emphasis is in original).

Plaintiff also argues that, "I was NOT eligible upon separation for an immediate annuity under FERS because I have not paid a deposit for my civilian service." (capitalization in original). Further, plaintiff asserts in her complaint that her disability retirement is not an immediate annuity that precludes her from severance pay. She argues, "[d]isability retirement must be applied for, it is not an immediate annuity or entitlement; I was not eligible for disability at the time of my termination." Plaintiff cites to and tries to rely on what she describes as "FERS Handbook, Chapter 42 – MRA +10 Retirement, Subchapter 42A FERS, Section 42A5.1-2 Advice to Employee, H. Severance Pay Eligibility (page 17)," the applicability of which defendant questions in its reply to its motion to dismiss. (capitalization in original). The plaintiff offers a quote from the FERS handbook, which she states indicates: "[a]n involuntarily separated employee who could become eligible for an MRA [Minimum Retirement Age] +10 annuity by paying a deposit for civilian or military service, but who does not do so, is eligible for severance pay at the time of the separation." Plaintiff also argues in her complaint that her time at the Department of Agriculture was "not creditable toward retirement as *Redeposit Not Paid*." (emphasis in original). Plaintiff further continues that she is not eligible for an MRA +10 annuity because her disability retirement was calculated using a method for those who are not qualified for an MRA +10 annuity. Plaintiff states:

4

Furthermore, after notification that I would be terminated from the USAF and would not receive severance pay, I applied for Disability Retirement, which was approved on January 4, 2019. Disability Retirement Benefits under FERS are computed using 1 of 2 methods. The first method is applied if the retiree meets the age and service requirements for immediate voluntary retirement (e.g. MRA +10), while the second method is for those who are not eligible for immediate annuity. My disability was calculated using the second method.

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 575 U.S. 985 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied, (Fed. Cir. 2002)); see also Pauly v. United States, 142 Fed. Cl. 157 (2019); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (alteration in original) (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)); see also Sanders v. Rose, 808 F. App'x 102, 106 (3rd Cir. 2020) (quoting Haines v. Kerner, 404 U.S. at 520).

Regarding defendant's motion to dismiss, pursuant to RCFC 12(b)(6), when examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2020); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court has stated:

5

> While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid. [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure §1216 pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 535 U.S. 506, 508 n.1 (2002); Nietzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").
>
> . . .
>
> [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim that relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56, 570 (brackets added) (footnote omitted) (first three omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570); Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019); Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016); A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir. 2014), reh'g and reh'g en banc denied, (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S at 557)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354-55 (Fed. Cir. 2010), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir. 2009) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly' suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied, (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts

6

upon which the claim is based, but enough facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)), reh'g denied, (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); Christen v. United States, 133 Fed. Cl. 226, 229 (2017); Christian v. United States, 131 Fed. Cl. 134, 144 (2017); Vargas v. United States, 114 Fed. Cl. 226, 232 (2014); Fredericksburg Non-Profit Hous. Corp. v. United States, 113 Fed. Cl. 244, 253 (2013), aff'd, 579 F. App'x 1004 (Fed. Cir. 2014); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 726-27 (2010); Legal Aid Soc'y of N.Y. v. United States, 92 Fed. Cl. 285, 292, 298 n.14 (2010).

When deciding a case based on a failure to state a claim, the court "must accept as true the factual allegations in the complaint." Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1355 (Fed. Cir. 2011); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56 (citing Swierkiewicz v. Sorema N.A., 534 U.S. at 508 n.1))); Scheuer v. Rhodes, 416 U.S. at 236 ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Schere, 468 U.S. 183, 190 (1984); Harris v. United Sates, 868 F.3d 1376, 1379 (Fed. Circ. 2017) (citing Call Henry, Inc. v. United States, 855 F.3d 1348, 1354 (Fed. Cir. 2017)); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied, (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

Plaintiff claims she is entitled to severance pay and should not have been barred from receiving severance pay because she was not eligible for and did not receive disability pay at the time of her separation, in part because she had to apply for disability pay, and also that she is not eligible for MRA +10 benefits. Plaintiff alleges that the Air Force sent her the following information:

> *The legislative history of the severance pay statute suggests at least two guidelines for interpreting its provisions. First, severance pay is intended to help individuals who lose their Federal jobs through no fault of their own.* ***Second, severance pay benefits should be construed liberally in favor of the employee.*** *Accordingly, an employee who is removed for inability to perform his or her duties may receive severance pay if the inability is caused by a medical condition that is beyond the employee's control.*[2]

---

[2] Regarding the severance pay statute, and although not cited by plaintiff, in Akins v. United States, 439 F.2d 175, 194 Ct. Cl. 477 (1971), a Judge of the United States Court of Claims stated in broad terms that the legislative history of 5 U.S.C. § 5595 "indicates that the express purpose of the severance pay provisions of the Act was to afford monetary relief to Federal employees who, after long years of faithful public service, 'find

7

(emphasis added by plaintiff). In fact, the quote appears to be information plaintiff sent to the Air Force and appears to be derived from the "Frequently Asked Questions" section of the OPM website regarding "Pay & Leave." see Frequently Asked Questions: Pay & Leave, OPM.GOV, https://www.opm.gov/FAQs/QA.aspx?fid=e64d74 ab-20a3-484c-8682-d2a2b46c22da&pid=993e30b8-93c2-40b3-93c2-00baad8d7c24 (last visited April 30, 2021).

Plaintiff further argues that the government denied her severance pay due to her failure to accept the government's reasonable accommodation offer. Plaintiff also states:

> the Plaintiff did not want to apply for disability retirement until after her 60th birthday, or about the time her severance pay would have been exhausted. As Plaintiff did not receive severance pay, both her first- and second-line supervisors strongly encouraged her to apply for medical disability retirement. The Defendant subsequently using Plaintiff's approval for disability to justify their lack of severance pay is duplicitous.

As indicated above, plaintiff is receiving disability benefits and has been, apparently, since the back-dated date of November 10, 2018. Defendant argues, in its motion to dismiss, that plaintiff "is not eligible to receive severance pay because she was eligible for two immediate annuities" upon separation, which defendant then details to be plaintiff's "disability retirement payments" and her eligibility to receive a MRA +10 benefit. According to defendant, "[e]ach immediate annuity, independently, disqualifies Ms. Wilcock from being eligible to receive severance pay." Defendant states: "A disability retirement payment falls squarely within the definition of 'immediate annuity' under 5 CFR [sic] § 550.703 [(2019)]. A disability benefit is a recurring benefit and it is payable under a retirement system applicable to Federal civil employees, 5 U.S.C. §§ 8451(a)(1)(A), 8451(c) [(2018)]." (brackets added).

To qualify for severance pay, a federal government employee must satisfy the requirements detailed in 5 U.S.C. § 5595(b) (2018):

> (b) Under regulations prescribed by the President or such officer or agency as he may designate, an employee who--
>
> (1) has been employed currently for a continuous period of at least 12 months; and
>
> (2) is involuntarily separated from the service, not by removal for cause on charges of misconduct, delinquency, or inefficiency;
>
> is entitled to be paid severance pay in regular pay periods by the agency from which separated.

---

themselves out in the cold without work and without retirement.'" Akins v. United States, 439 F.2d at 178, 194 Ct. Cl. at 484 (quoting 111 Cong. Rec. 25677 (1965) (remarks of Congressman Hanley)).

8

5 U.S.C. § 5595(b); see also Gambrell v. United States 29 Fed. Cl. 764, 765 (1993). The government points out that plaintiff had been a federal employee for at least 12 months and was involuntary separated, which, under the proper circumstances, can qualify an individual for severance pay. Federal regulations which interpret 5 U.S.C § 5595, however, provide certain limitations on severance pay eligibility, including the regulation at 5 C.F.R. § 550.704(b)(5) (2019). The regulation at 5 C.F.R. § 550.704(b)(5) states that a Federal employee is not eligible for severance pay if she "[i]s eligible upon separation for an immediate annuity from a Federal civilian retirement system or from the uniformed services." Id. The regulation at 5 C.F.R. § 550.703 states:

> Immediate annuity means—
>
> (a) A recurring benefit payable under a retirement system applicable to Federal civilian employees or members of the uniformed services that the individual is eligible to receive (disregarding any offset described in § 550.704(b)(5)) at the time of the involuntary separation from civilian service or that begins to accrue within 1 month after such separation, excluding any Social Security retirement benefit; or
>
> (b) A benefit that meets the conditions in paragraph (a) of this definition, except that the benefit begins to accrue more than 1 month after separation solely because the employee elected a later commencing date.

5 C.F.R. § 550.703 (2019). The disability retirement statute states "an employee shall be considered disabled only if the employee is found by the Office to be unable, because of disease or injury, to render useful and efficient service in the employee's position." 5 U.S.C. § 8451(a)(1)(B) (2018). In Lindahl v. Office of Personnel Management, 470 U.S. 768, 772 (1985), the United States Supreme Court noted that disability benefits are an immediate annuity and explained that "a covered employee who has completed at least five years of federal civilian services is eligible for an immediate annuity if found 'disabled,' whether he is retired on his own application ('voluntary' retirement) or on the application of his employing agency ('involuntary' retirement)." Lindahl v. Off. of Pers. Mgmt., 470 U.S. at 772 (quoting 5 U.S.C. § 8337(a)). The Supreme Court continued:

> *The Civil Service Retirement Act (Retirement Act).* Government employees who are covered by the Retirement Act are required to contribute to a portion of their salaries to Civil Service Retirement and Disability Fund. 5 U.S.C. §§ 8334(a), (b). The amount of retirement annuity is based on the employee's average pay and years of federal service. § 8339. The Retirement Act provides for several types of annuities; at issue here are disability retirement annuities.

Lindahl v. Off. of Pers. Mgmt., 470 U.S. at 771-72 (footnotes omitted) (emphasis in original). The government in the above-captioned case argues that the disability payments for which plaintiff was immediately eligible and which she receives constitute an immediate annuity that disqualifies plaintiff from severance pay. Although plaintiff

9

maintains disability is not an immediate annuity because she had to apply for it, based on the statutes, regulations, and caselaw, the current disability plaintiff agrees she applied for, and receives, is considered an immediate annuity because the benefit is recurring, and plaintiff was eligible to receive the payment at the time of her involuntary separation.

Defendant also argues that, even if plaintiff's argument regarding her disability benefits could be found to have merit, plaintiff would be ineligible for severance pay because she was eligible for MRA +10 retirement benefits at the time of her separation. Pursuant to Section 8412 of Title 5, a government employee becomes eligible for MRA +10 if, "[a]n employee or Member who is separated from the service after attaining the applicable minimum retirement age under subsection (h) and completing 10 years of service is entitled to an annuity." See 5 U.S.C. § 8412(g) (2018). According to defendant, "Ms. Wilcock's eligibility for MRA +10 renders her ineligible for severance pay under 5 C.F.R. § 550.704(b)(5)." Plaintiff concedes she is of the minimum retirement age, but plaintiff maintains she is not eligible for MRA +10 because "I have not paid a deposit for my civilian service (Exhibit A). The 13 years, 3 months, and 13 days working for the USDA Forest Service is listed as noncredible FERS service." Additionally, plaintiff again cites to the FERS Handbook, which she argues indicates an "*involuntarily separated employee who could become eligible for an MRA +10 annuity by paying a deposit for civilian or military service, but who does not do so, **is eligible for severance pay at the time of separation***." (emphases in original). Defendant, however, identifies the language plaintiff cites as having been from an April 1998 version of a FERS handbook, which has since been overridden through provisions in the National Defense Authorization Act, which was passed in 2009, and by guidance regarding its implementation issued by the OPM. (citing 5 U.S.C. § 8422 (2018); OFFICE OF PERSONNEL MANAGEMENT, BENEFITS ADMINISTRATION LETTER 11-103 (Feb. 25, 2011)). Additionally, as defendant states, "if a FERS redeposit is not made, the refunded service *is still creditable in determining eligibility for retirement benefits*." (emphasis in original). Plaintiff, therefore, has failed to state a claim upon which relief can be granted in this court regarding her ineligibility for MRA +10 benefits.

Plaintiff's complaint and response to defendant's motion to dismiss also appears to raise allegations of bad faith. Plaintiff states, "[e]ach time the Plaintiff was able to show evidence that the Defendant's cause *du Jour* for denying severance pay was not valid; the Defendant responded by changing their reason for denying severance pay." (emphasis in original). Plaintiff further states "[r]efusing severance pay and forcing plaintiff to take disability to maintain an income and health insurance is a form of disability discrimination." Plaintiff also argues defendant is responsible for exacerbation of her medical conditions. Plaintiff argues, for example, that "[d]efendant kept fabricating reasons to deny severance pay." Plaintiff's allegations raise grievances of tortious conduct by federal officials. This court, however, has no jurisdiction to entertain such allegations. The Tucker Act specifically excludes tort claims from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." (emphasis added)); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993);

Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008); Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."), reh'g denied, (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined, (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Kant v. United States, 123 Fed. Cl. 614, 616 (2015) ("[Plaintiff's] claims for 'conversion' and 'fraud' sound in tort . . . ."); Cox v. United States, 105 Fed. Cl. 213, 218 (2012) ("[P]laintiffs contend that the United States has engaged in tortious conduct, including harassment and persecution, malfeasance, fraud, abuse, and deception . . . . The Court of Federal Claims does not possess jurisdiction to entertain claims sounding in tort."); Jumah v. United States, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims."), aff'd, 385 F. App'x 987 (Fed. Cir. 2010); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); Fullard v. United States, 77 Fed. Cl. 226, 230 (2007) ("This court lacks jurisdiction over plaintiff's conspiracy claim because the Tucker Act specifically states that the Court of Federal Claims does not have jurisdiction over claims 'sounding in tort.'"); Edelmann v. United States, 76 Fed. Cl. 376, 379-80 (2007) ("This Court 'does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties'") (quoting Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998)); McCullough v. United States, 76 Fed. Cl. 1, 3 (2006); Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied, (Fed. Cir. 2006); Henderson v. United States, No. 18-1007, 2021 WL 733825 at *3 (Fed. Cl. Feb. 25, 2021). Therefore, any of plaintiff's claims which sound in tort must fail for lack of subject matter jurisdiction.

Similarly, plaintiff's allegations of alleged discrimination are likewise not within the jurisdiction of the United States Court of Federal Claims. Plaintiff's complaint alleges that she was discriminated against due to her heart condition, alleging "disability discrimination." To the extend that plaintiff is alleging a claim under the Americans with Disabilities Act (ADA), the statute is not a money-mandating law. See Dziekonski v. United States, 120 Fed. Cl. 806, 809-10 (2015) (noting that the ADA is not a money-mandating provision that would provide the United States Court of Federal Claims with jurisdiction); Shipman v. United States, 118 Fed. Cl. 701, 707 (2014) ("[T]he court does not have subject matter jurisdiction over claims alleging a violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq. because the ADA is not a money-mandating source of law." (internal quotation marks and citation omitted)). Moreover, the United States District Courts possess exclusive jurisdiction over ADA claims. See, e.g., McCauley v. United States, 38 Fed. Cl. 250, 266 (1997) (citing 42 U.S.C. § 12117(a)) (finding the district courts had exclusive jurisdiction over claims brought under the ADA), aff'd, No. 97-5130, 1998 WL 224949, 152 F.3d 948 (Fed. Cir. 1998). Thus, this court is not the proper forum to seek judicial relief under the ADA. See id.; see also Maclin v. United States, 121 Fed. Cl. 66, 67-68 (2015) ("Further, Plaintiff's complaints of violations of the ADA are also outside the Court's jurisdiction as federal district courts have exclusive jurisdiction over ADA claims."); Johnson v. United States, 97 Fed. Cl. 560, 564 (2011) ("The Court notes that Federal district courts have exclusive jurisdiction over the ADA and Rehabilitation Act claims."); Searles v. United States, 88

11

Fed. Cl. 801, 805 (2009) ("Indeed, the ADA does not apply to the federal government as an employer and district courts hold exclusive jurisdiction over ADA claims."); Boddie v. United States, No. 96-5060, 1996 WL 252832, at *1, 86 F.3d 1178 (Fed. Cir. 1996) ("Neither the Americans with Disabilities Act nor the Civil Rights Act so mandates compensation. The Americans with Disabilities Act does not cover the federal government. See 42 U.S.C. §§ 12111(2), (5), 12112 (1994)."), cert. denied, 521 U.S. 1105, reh'g denied, 522 U.S. 909 (2007). Therefore, this court does not have jurisdiction over plaintiff's ADA claims.

To the extent plaintiff is trying to allege a violation of her civil rights under 42 U.S.C. § 1983, the United States Court of Federal Claims lacks jurisdiction to hear claims alleging a deprivation of civil rights under color of law. The statute at 28 U.S.C. § 1343(a)(4) (2018) states, in part: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . [t]o recover damages or to secure equitable or other relied under any Act of Congress providing for the protection of civil rights, including the right to vote." Id.; see also Elkins v. United States, 229 Ct. Cl. 607, 608 (1981) ("[W]e [the Judges of the United States Court of Claims] do not have jurisdiction over claims based upon alleged violations of the civil rights laws." (citation omitted) (brackets added)); see also Weir v. United States, 141 Fed. Cl. 169, 177-78 (2018); Johnson v. United States, 135 Fed. Cl. 565, 575 (2017) ("Section 1343 of Title 28 provides the federal District Courts original jurisdiction over any relief requested under an 'Act of Congress providing for the protection of civil rights.'" (citations omitted)); Vincent v. United States, 135 Fed. Cl. 561, 563 (2017) ("[A]ctions for civil rights violations brought under 42 U.S.C. § 1983 (2012) cannot be heard by this court." (citing Marlin v. United States, 63 Fed. Cl. 475, 476 (2005), appeal dismissed, 146 F. App'x 491 (Fed. Cir. 2005))), aff'd, 733 F. App'x 529 (Fed. Cir. 2018); Wagstaff v. United States, 105 Fed. Cl. 99, 109 (2012); May v. United States, 104 Fed. Cl. 278, 284 (2012), aff'd, 534 F. App'x 930 (Fed. Cir. 2013). Furthermore, in Blassingame v. United States, a Judge of the United States Court of Federal Claims determined that jurisdiction is lacking over claims brought pursuant to civil rights laws, including 42 U.S.C. § 1993, as jurisdiction for such claims remains exclusively with the United States District Courts, and stated:

> Section 1983 is not a jurisdiction-granting statute. District courts are given jurisdiction to hear claims for damages for violation of that provision by virtue of 28 U.S.C. § 1343(a)(4) (1988). Such an action cannot be sustained here, however, because this court has not been given an equivalent jurisdiction. See Sanders v. United States, 32 Fed. Cl. 573, 576 (1995); Anderson v. United States 22 Cl. Ct. 178, 179 n.2 (1990), aff'd, 937 F.2d 623 (Fed. Cir. 1991).

Blassingame v. United States, 33 Fed. Cl. 504, 505, aff'd, 73 F.3d 379 (Fed. Cir. 1995), reh'g denied (Fed. Cir.), cert. denied, 517 U.S. 1237 (1996). Therefore, with respect to the plaintiff's claim based on plaintiff's alleged civil rights violations, the court finds that the United States Court of Federal Claims does not have jurisdiction to hear plaintiff's claims.

## CONCLUSION

In sum, plaintiff has not provided evidence to demonstrate that she was not eligible for immediate disability payments or an immediate annuity. Additionally, plaintiff's claims of bad faith or inappropriate acts by government officials are not within the jurisdiction of this court. As a result, plaintiff's complaint should be dismissed for failure to state a claim and for lack of jurisdiction. For the reasons stated above, defendant's motion to dismiss is **GRANTED** and plaintiff's complaint is **DISMISSED** in its entirety. The Clerk of the Court shall enter judgment consistent with this Opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**
